Turley J.
delivered the opinion of the court.
On the 18th day of August, 1843, G. A. Davie, who had been elected trustee for the county of Montgomery, executed his bond with G. P. Allen and Robert McMurdie his sureties, to the governor in and over the State of Tennessee, in the penal sum of three thousand dollars, to be void upon condition, that he received and securely kept and paid over the school funds of said county as the law directs. This bond was acknowledged in open court at the August term, 1843, of the county court of Montgomery. The condition of this bond being broken, a suit thereon was commenced at the July term, 1846, of the circuit court of Montgomery in the name of Aaron V. Brown, Governor, in and over the State of Tennessee, against G. P. Allen and Robert McMurdie two of the obligors. To the declaration, the defendants filed a general demurrer which was sustained by the circuit judge and judgment was given accordingly, from which an appeal in error is prosecuted to this court.
The question presented for consideration upon this demurrer, is, whether a suit at law can be maintained upon this bond, in the name of the governor of the state. By the 43d section of the act of 1838, chap. 148, and the 41st section of the act of 1840, chap. 38, the trustees of the different counties of this state, before the reception of the portion of common school fund belonging to their counties under the general law for distributing it to them, are required to enter into bond with two or more securities, for the proper performance of their duties ill relation thereto, to the superintendent of public instruction and his successors in office. The bond sued on then in this action is not a good statutory bond, according to all the decisions of the state courts upon such subjects, and the question necessarily is, whether it can be held to be a *179 good common law bond to be sued upon in the name of ithe governor of the state.
Bbfore entering into a general investigation of this subject we deem it proper to premise, that the bringing this suit in the name of Aaron V. Brown, governor and successor of James C. Jones, gives no additional strength to the action which it would not have had, provided the suit had been brought merely in the name of the governor of the state; and that the question must be examined as if it had been so brought; for if the bond be not a good common law bond when made payable to the office of governor as such; the making it payable to a particular governor described eo nomine and his .successors, could not sustain the action, for in such case the suit would not enure to his successors, but must be brought in his name if alive, and if not, in the name of his personal representative. The bond in this case in point of fact was not executed to any particular governor eo nomine, but to the governor in and over the State of Tennessee: then can an action at law be maintained upon it? The solution of this question depends upon the fact whether a bond can upon common law principles be executed to the governor of the state. In the case of Polk vs. Plummer and others, 2d Humph., 506, Judge Reese who delivered the opinion of the court says: '“that when a statute directs a bond for the public benefit to be made payable to the governor or other functionary having legal succession, the office is the payee, and the successor whether described eo nomine, either in the statute or bond, or not, may yet maintain the action, such officer being made by' form of the statute and for the public benefit, quoad hoc, a corporation sole.” There is no reason whatever for questioning the general truth of this proposition: it is sustained by the judgment of the supreme court of North Carolina in the case of the Justices of Cumberland vs. John Armstrong and others, 3d *180 Dev. Rep. 284, where it is held that the acts of assembly which direct the justices of the county courts to take bonds to themselves in their official capacity confer on them, as to such bonds, a corporate character.
But it must be admitted in both these cases, that if they be only quoad corporations, and the bonds be not within the statute authorizing them, they will not enure by succession.. But is a governor of a state only quoad a corporation sole? We think not: it is true it is held in the case of Polk vs. Plummer and others, to be quoad that particular transaction a corporation sole, but that was all that it was necessary to hold him in that case, but it is not determined that he is not a corporation sole for other purposes besides those in which bonds are directed by statute to be made payable to him. Blackstone in the 1st volume of his commentaries, page 469, says: “a corporation sole consists of one person only, and his successors in some particular station who are incorporated by law, in order to give them some legal capacities and advantages, particularly that of perpetuity which in their natural persons they could not have had”. In this view the king is a sole-corporation, so is a bishop, and so is every parson and vicar.
Now, the governor constitutes the executive department of the state; he is vested by the constitution of the state with great and important powers to be executed for the benefit of the state, and it is absolutely necessary that there should be no interregnum in his office, to avoid many and great inconveniences; this cannot be unless we apply to him the maxim of the common law, applicable to the king, that he never dies; this maxim of the common law (like most if not all of them,) is based upon wise conceptions and not upon any foolish reverence for kings or belief in their sanctity or immunity from the common lot of mankind, but upon the necessary assumption that the state which protects and cares for all, never ceases to exist, but that it is always alive and active in the *181 performance of its duties to the citizen. The state being ah ideality can only be conceived of through,the public functionaries who constitute the different departments by which it exists, therefore to hold that it never dies, is necessarily to hold that those who constitute its necessary departments never die; the departments by which the government of Great Britain exists are the king and houses of parliament; the king is the executive of the nation, and he and the two houses of parliament are the legislature; there is never in comtemplation of law an interregnum, in either of these departments, for the law making and the law executing power being absolutely necessary to the existence of the state, if they cease to be, the state pro tempore ceases to exist, which would be a solecism in a government not destroyed by invasion or rebellion, and thrown back upon the primitive principles of society.
The governor of this state is the executive of it; it is one of his duties among many others to see that the laws of the state are executed and obeyed :• this is a great and fundamental duty without the proper observance of which, society might and would necessarily be greatly distracted: and the proper security of life, liberty, and property seriously endangered for the purpose of enforcing the execution of the laws, and the protection of the state from rebellion and invasion; he is the commander of the forces of the state; to hold that there can be an interregnum in this office, would be to hold to the temporary anarchy of the state: and in order to hold that there is no such interregnum, we must hold that the Governor as such never dies; to do this he must be a corporation sole with succession in office. Such we think he is, constituted so, by the organization of our state government, and not by any particular statute or statutes; and therefore when bonds are directed to be made payable to him in his official capacity, they *182 are payable to him in his capacity as a corporation sole quoad that particular transaction.
If the governor of the state be a corporation sole, then he may be a trustee, and that too in things not connected with his office, for it is well settled that corporations both aggregate and sole may be trustees for others. A bond then executed to a governor of the state voluntarily, which violates no public policy, or private morality, but on the contrary, is made to secure a public right, may be sued upon^at law in the name of the governor for the benefit and use of those interested in it, and that too, though there be no express statute authorizing it. There is no case to be found contradicting this position.
In the case of the United States vs. Thos. Tingley, 5th Peters, 114, it was held “that a bond voluntarily given to the U. States and not prescribed by law, is a valid instrument, upon the parties to it, in point of law, because the U. States have in their political capacity a right to enter into a contract, or take a bond not previously provided by law, and the U. States being a body politic may within the sphere of the constitutional power granted to it enter into contracts not prohibited by law and appropriate to the just exercise of those powers.”
In the case of Hibbits vs. Canada et als. 10th Yerger 465, it was held by this court, that when an administration bond was made payable to James Hibbits, chairman of Smith county and his successors in office, instead of the governor as is directed by law, “that no action at law could be maintained on the bond in the name of a successor, but that the bond was valid at common law as a voluntary bond, and that a suit at law might be maintained upon it in the name of the personal representative of Hibbits.” The chairman of the county court is not a corporation sole, and therefore upon his death he has no successor, and a bond executed to him without authority by statute, necessarily descends to his personal representative and must be sued upon in his name.
*183 The case of Polk, governor, vs. Plummer et als. in 2d Humph. holds as we have seen in a too restricted sense that the governor is a corporation sole when a bond has been executed to him by statutory provision. In the case of Jones, governor, vs. Wiley et als., 4th Humph. 146, a bond was taken from the clerk of Roane county court, payable to Newton Cannon and his successors in office, but taken before the wrong tribunal; it was held that the bond was not a good statutory bond, but that it was a good common law bond, and might be sued upon in the name of Cannon’s personal representative, but not in the name of his successor. But Newton Cannon was not a corporation sole, and therefore could have no successors, and even if the bond had been made payable to him calling him governor, it is probable, it would have been held to be a description personal only.
In the case of the justices of Carroll county court vs. Buchanan, Murphy L. R. 2d, 40, it it held by the supreme court of North Carolina, that a guardian bond made payable to the justices of Carroll county is void at common law, but because it was held that the justices of the county court are not a corporation, ‘and their individual names were not used in the bond or suit, but it may be doubted whether, if the bond was executed in pursuance of the statute, the justices would not under the authority of the case of the justices of Cumberland vs. Armstrong, 3d Dev. be considered a corporation quoad that transaction.
In the case of the governor for use of the State Bank vs. Twitty, et als., 1st Dev. 153, it was held by the supreme court of North Carolina that a sheriff’s bond in a sum different from that directed by law made payable to John Branch, governor, and his successors was not a good statutory bond and could not be sued upon in the name of Gabriel Holmes, governor, and his successors. This case is the same with that of Jones, governor vs. Wiley et als., 4th Hum. 46, and was decided as that was, for *184 the same reason, to wit, that the bond is payable to the governor as an individual eo nomine, and not to his office, and therefore descends to his personal representative. These are all the cases to which we have been referred as conflicting with the view we have taken of this case: we think, as we have endeavored to shew, that they are not in conflict with it.
Upon the whole then, we are of opinion, that the execution of this bond being voluntary, and for the purpose of securing a fund belonging to the county of Montgomery, donated to it by the state, and for which the trustee of the county was bound to enter into bond and security before he received it, that the mistake of the county court in not talcing this bond payable to the superintendent of public instruction, but to the governor of the state, though it vitiates it as a statutory bond, does not avoid it at common law, but that the governor of the state being a corporation sole, a suit may be maintained upon it in his name for the benefit of the county of Montgomery.
We therefore reverse the judgment of the circuit court, overrule the demurrer, and remand the case for further proceeding.